## HAWKINS & WIFE VS. GREENE AD.

Where a testator directed that his estate should be divided among his children when the youngest child should become of age, making provision for the support and education of his children, in the meantime, and for the management of his property, none of which was carried out, a court of chancery cannot construe the will to mean that such postponement of the division should be dependent upon the other provisions of the will being complied with, and decree a division of the property at once—such a construction being manifestly opposed to the plainly expressed intention of the testator.

*Appeal from Clark Circuit Court in Chancery.*

Hon. LEN B. GREEN, Circuit Judge.

GALLAGHER & KNIGHT, for the appellants.

It was proper for the complainants to apply to chancery for a construction of this will. The court had jurisdiction for that purpose; (10 *Paige* 199,) and also to decree distribution to complainant, Amy, of her share in a portion of the property devised, because her share vested in her on the death of her father, (1 *Jarman on Wills*, 641, *and cases cited;* 643 *and n.* (*a*); *Keys on Chattels, sec.* 208, 211,) subject to the debts of the estate and the postponement of the possession to the time stated; but this postponement was not a matter which chancery may not annul, if, under all the circumstances of the case, no injury from such annulment in favor of complainant will follow to the other devisees, and her condition be benefited, and the law more clearly followed by such a course, and no violence be offered to the intent of the testator. The court has ample power to order distribution as to a portion of the estate, at least, if not as to the whole of it. See 6 *John, Ch.* 74.

FLANAGIN, for the appellee.

Mr Justice FAIRCHILD delivered the opinion of the Court.

The will of Albert G. Johnston contained a request that Thaddeus F. Moreland and his wife should take the children of the testator, give them an education, and allow them to choose their business, as they should become of age; and when one became of age, that it should take its ratable part of the estate as a *loan* to be returned when the youngest child should become of age, at which time an equal division of the estate was to be made among all his heirs.

This seems to be the meaning of the will, although expressed with more fullness and exactness than the will, which is very meagre and informal.

The will further requested that Moreland should move to the residence of the testator, and live there until some one of his children should wish to occupy it, who would take the rest of the children.

The negroes of the testator were to remain on the plantation if they could support themselves and the testator's children from the proceeds of the farm and the stock, and if this could not be done, the grown negroes were to be sold and the money put at ten per cent. interest in good hands.

The executors, of whom Moreland was one, renounced the trust. Moreland and wife declined to accede to the request relative to taking the testator's children and occupying his residence. The oldest child of the testator was married in 1858, the will having been made in 1854, and she and her husband also declined to take possession of the homestead, and to gather the other children there, with themselves, as provided for in the will. The administrators, with the will annexed, of whom there have been two in succession, have not followed the will in keeping the negroes together on the plantation, or in selling the grown ones and loaning out the money as directed in the will, but have hired out the lands and the negroes, the avails of which, besides paying debts, have been applied to the support of the infant children, who are living in different places, under the direction of their guardians, it is presumed, as the answer shows, an annual application of the assets to the respective guardians of the children. The youngest child was five years old in 1859, when this suit was begun.

Upon this state of facts, Jonathan B. Hawkins and his wife, she being the married daughter of Johnston, heretofore mentioned, filed their bill on the chancery side of the Clark Circuit Court, against the administrator, with the will annexed, and the other children of Johnston, in which they insisted that as the intentions of the testator had been frustrated, in his children not having been kept together in the family of Moreland, or in the family of any of his children, and in the negroes not having been retained on his plantation; that the reason of the postponement of

the division of his estate had ceased, and they prayed that the estate might be finally partitioned between the children, as the ones entitled to it, or that the portion of Amy Hawkins should be set apart to them, not as a loan, but as her property. The plaintiffs also found their bill on the ambiguity of the will, and ask for its construction by the court.

The administrator demurred to the bill for the supposed purpose of obtaining the opinion of the court upon the law of the case as presented by the bill, unembarrassed by any other consideration, as in this court he expresses a willingness, and desire even, that the prayer of the plaintiffs should be granted, if the law will allow the estate to be disposed of according to the application of the plaintiffs.

The demurrer to the bill having been sustained, the plaintiffs appealed, and press upon this court to decree for them, as they allege the Circuit Court should have done.

We must affirm the decree. What other disposition of his estate Johnston might have made, had he foreseen that his hopes respecting his children living with Moreland and wife, and with one of their number, would not have been fulfilled, we do not know. Nor can we say that, if he had known that his negroes would not have supported themselves and his children on the plantation, or would not have been sold, that is such of them as he directed to be sold, he would have made a different will from that which he left behind him as his last will.

When the meaning of a will is uncertain, even a doubtful construction of it might be supported by plausible argument based upon other provisions of the will, or upon its general apparent or presumable design. But we should not know how to justify a construction of it, that is manifestly opposed to the plainly expressed intention of the testator; and to maintain the bill in this case, would be to give such construction to the will of the father of the female plaintiff. We have no power to remedy the inconveniences under which the plaintiffs may be confined, by holding

the patrimony of the wife as a loan instead of receiving it as her absolute portion of the estate.

And it is not the object of this suit for a scheme to be devised or settled for the maintainance of the other infant children of Johnston, and without suitable pleadings, upon which to found a decree, we cannot exercise a jurisdiction even for the protection of infants, though upon a proper case alleged and proved, the exercise of such jurisdiction would follow as a matter of course. But we do not wish to be understood as asserting a jurisdiction that could in any way anticipate the division of the estate provided for by the testator. If such power may have ever been exerted by a chancellor, it would have to be enquired whether it was used in some character personal to the chancellor, or as the presiding officer of the court, and whether any such power could be assumed in this State by the circuit courts sitting in chancery, under their constitutional grant of chancery jurisdiction.